**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DOUGLAS P. CALVEY, STEPHEN KYLE**
**NORMAN, HUDA SCHEIDELMAN, CAROL**
**TORRANCE HOFFMAN, and**
**NEIL SULLIVAN,**

                              **Plaintiffs,**

        **v.**                              **8:20-CV-711**
                                            **(TJM/CFH)**


**TOWN BOARD OF NORTH**
**ELBA, TOWN OF NORTH ELBA,**
**VILLAGE OF LAKE PLACID**
**BOARD OF TRUSTEES, and**
**VILLAGE OF LAKE PLACID,**

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Sr. U. S. District Judge**

### DECISION & ORDER

        Before the Court is Defendants' motion to dismiss this case where Plaintiffs allege

Defendants violated their constitutional rights by regulating short-term rentals of homes in

the Lake Placid, New York area.  See dkt. # 7.  The parties have briefed the issues and the

Court has determined to resolve the matter without oral argument.

**I.      BACKGROUND**

        Plaintiffs filed a Complaint in the Supreme Court of Essex County, New York.  See

Complaint ("Complt.") dkt. # 2.  Defendants removed the case to this Court on June 26,

2020. See dkt. # 1.

1

Plaintiffs Douglas P. Calvey, Stephen Kyle Korman, Huda Sheidelman, Carol Torrance Hoffman, and Neil Schuman live in various parts of New York but own real property in Lake Placid, New York.  Complt. at ¶¶ 1-5.  Plaintiffs allege in their Complaint that the Village of Lake Placid and the Town of North Elba are resort communities, "known for hosting sporting events like the Winter Olympic Games in 1932 and 1980," as well as other athletic competitions and other outdoor events.  Id. at ¶ 18.  North Elba and Lake Placid also attract tourists "to participate in recreational activities such as downhill and cross-country skiing, ice skating, hockey, year-round hiking, cycling, swimming, fishing, and kayaking."  Id. at ¶ 19.  The area around the Defendant Village and Town has a history of hosting tourists that began in the nineteenth century, gained momentum with the 1930s, and continues today.  Id. at ¶ 20-24.  Plaintiffs allege that "[u]pon information and belief, during the last 100 years, short-term rentals of citizens' homes in the Lake Placid during times when the property owners were not using the same, have provided a supply of accommodations commensurate with that would or could not be met by local hotels."  Id. at 23.

Plaintiffs allege that "significant demand" now exists for short term rentals.  Id. at ¶ 25.  The Lake Placid economy, they contend, "is driven by tourism."  Id. at ¶ 26.  As demand for short-term rentals in Lake Placid has increased, so has the number of citizens' homes offered to meet that demand.  Id. at ¶ 27.

During the past decade, a number of internet-based home-sharing services such as Airbnb, homeaway.com, and vrbo.com have appeared.  Id. at ¶ 28.  These services permit "all manner of property owners to rent out their spare rooms or their whole homes to vacationers" in Lake Placid.  Id.  Services like Airbnb and Homeway allow "homeowners to

rent their homes to make money and help pay their mortgages and taxes to afford the vacation home that they could not otherwise afford." Id. at ¶ 29.  This sort of sharing of one's home–"sometimes for money"–Plaintiffs allege, "is a long-standing American tradition." Id. at ¶ 30.  Airbnb and other services are often less expensive and offer "a more unique experience" than a traditional hotel.  Id. at ¶ 31.  Persons who use Airbnb, Plaintiffs claim, can "[stay] in a traditional, residential neighborhood" and enjoy "more space including a kitchen for cooking[.]"  Id.  Short-term rentals booked through internet services "have grown dramatically more popular among travelers" in the past few years.  Id. at ¶ 32.  "U.S. Millennials" particularly make use of those services.  Id. at ¶ 33.

Plaintiffs report that the Lake Placid short-term rental market contained 620 available rentals in December 2019.  Id. at ¶ 34.  The average number of days rented by any short-term property is 126.  Id. at ¶ 35.  Plaintiffs allege that "the median monthly revenue for short-term rental properties is $2,950 with an annual median revenue of $34,500."  Id. at ¶ 36.

The Town of North Elba "encompasses" the Village of Lake Placid.  Id. at ¶ 38. Together, the two municipalities "offer tourists shopping and dining experiences, cultural activities and festivals."  Id. at ¶ 37.  The population of Lake Placid and the Town of Elba together amounted to 8,957 persons in the 2010 census.  Id. at ¶ 38.  The two entities require tourism to support their economies.  Id. at ¶ 39.  Short-term rentals of homes provide "[o]ne of the principal ways" to accommodate tourists in Lake Placid and North Elba.  Id. at ¶ 40.

Plaintiffs allege that the character of Lake Placid is shifting more towards a community or vacation and second homes.  Id. at ¶ 41.  The Plaintiffs point to a housing

3

assessment of North Elba that indicates that the community has a "declining year-round population, fewer families, and fewer workers" who live "in the community." Id. at ¶ 42. The number of vacation and seasonal homes has increased at the same time, "with a greater number of residential property owners living out of town and out-of-state." Id. Plaintiffs contend that short-term rentals provide "as much as $32 million dollars of economic benefit" each year "to the Lake Placid region." Id. at ¶ 43. Such rental homes also provide North Elba, Lake Placid, and the County of Essex "hundreds of thousands" of dollars in yearly taxes, "employ local contractors, housekeepers, and other employees," and improve "the local real estate market for larger or older homes in need of renovation or those larger than most single family homeowners want to purchase." Id. A 2014 study of housing needs in the community showed increasing second-home ownership and increasing short-term rentals in the community. Id. at ¶¶ 44-45. The presence of such forms of use and ownership, the study found, "had the potential to exacerbate existing housing affordability and availability issues for the workforce, which" had to be "balanced with the positive benefits short-term rentals provide the community." Id. at ¶ 47.

In March, 2020, the Town Board of North Elba and the Village of Lake Placid passed local legislation amending their land use codes to address short-term rentals. Id. at ¶¶ 48-52. This legislation became effective on or about March 17, 2020. Id. at ¶ 50-52. The Defendants delayed enforcement of the short-term rental legislation to permit the Enforcement Officer to process applications and arrange for enforcement. Id. at ¶¶ 53-54.

Defendants allege that the short-term rental law states as its purpose "'to regulate the short-term rental dwelling units within the Village of Lake Placid and Town of North Elba and to establish comprehensive registration and licensing regulations'" to prevent

"extensive short-term rentals that 'endanger' the historical and residential character of the 'resident resort community.'"  Id. at ¶ 55.  The law requires property owners to acquire a "revocable short-term rental permit" to use a "dwelling unit . . . for short-term rental purposes."  Id. at ¶ 56.  An owner must pay a fee for such a permit.  Id.  The law defines as short-term rental as:

> A dwelling unit that is rented, in whole or in part, to any person or entity for a period less than 30 consecutive nights, and includes any residential building or apartment, single-or two-family dwelling, condominium, townhouse, guest house, cottage, cabin, or accessory dwelling which is rented as living quarters with a kitchen for any period less than 30 consecutive nights.  This definition expressly includes [a] Rooming/Boarding house as that term is defined in Section 10.2 of the Village of Lake Placid/Town of North Elba Land Use Code.  This definition excludes timeshare, hotels, bed and breakfast establishments and school or non-profit dormitories.  "Rental" means an agreement granting use or possession of a residence, in whole or in part, to a person or group in exchange for consideration valued in money, good, labor, credits, or other valuable consideration.  Use of a short-term rental by a record owner of a property shall not be considered to be a rental under this section.

Id. at ¶ 57.

A short-term rental property may not be rented more than ninety days in calendar year.  Id. at ¶ 58.  The law does not apply to:

> a.  Hosted short-term rental units which are those in which the host is a resident and an owner who lives at the property for at least 184 days per calendar year and is home overnight during the term of each rental,
> b.  Condominium projects and town house projects which have an active homeowners' association,
> c.  And rental units on Main Street and Sentinel Road in the Village Center District (VC) and Wilmington Road, Cascade Road and Saranac Avenue in the Gateway Corridor District (GC), which rental units shall also be exempt from Section 11.2A(5).

Id. at ¶ 58.

The law also requires that "a copy of the short-term rental permit be online."  Id. at ¶ 59.  A copy of the permit is also available for public review in the Codes office.  Id.  Another

copy of the permit must be "prominently displayed near the front entrance of" the rental property. Id. The rental permits must "state the names, addresses and phone numbers of every person or entity that has an ownership interest in the short-term rental property and of a primary contact person who shall be available to investigate complaints during the entire time (24 hours per day) the short-term rental property is being rented." Id. at ¶ 61.

The short-term rental law gives an Enforcement Officer or a person designated by the Officer a "right to inspect the short-term rental property to ensure it complies with" provisions of the local law titled "'Compliance, Hearings and Penalties,' at any reasonable time of day upon giving notice to the owner or occupant of said unit." Id. at ¶ 62. The short-term rental law provides penalties for violations of the statute, as follows:

> a. By a fine or penalty of not less than $350.00 and not exceeding $1,000.00 for a first offense or, if greater, the maximum amount allowed under the Municipal Home Rule Law, the Town Law, or the Village Law.
> b. By a fine or penalty of not less than $1,000.00 not exceeding $3,000.00 for a second offense, both of which were committed within a period of five (5) years or, if greater, the maximum allowed under the Municipal Home Rule Law, the Town Law or the Village Law.
> c. Each week's continued violation constitutes a separate additional violation.

Id. at ¶ 63. The law also provides that property owners sued for injunctive or other form of relief by the Town of North Elba or the Village of Lake Placid must pay the legal fees and costs of the municipalities for undertaking such proceedings. Id. at ¶ 64.

The law mandates that owners provide renters a packet of information the Town and the Village have prepared. Id. at ¶ 65. That information "summariz[es] the restrictions, guidelines, and requirements applicable to short-term use." Id. The packet includes a set of "Good Neighbor Guidelines." Id.

The law also requires that short-term rental properties have off-street parking equal

6

to the number of bedrooms on the property.  Id. at ¶ 66.

Plaintiffs' Complaint contains Thirteen Causes of Action.  Court One alleges a violation of Plaintiffs' right to equal protection of the law under the United States and New York constitutions because the short-term rental law treats similarly situated landowners differently without a rational basis in the law.   Count Two alleges that the short-term rental law violates Plaintiffs' right to be free of unreasonable search and seizure under the federal and New York constitutions by permitting the Enforcement Officer to enter and search any short-term rental for inspection without a warrant, justification, or chance to protest.  Count Three alleges that, by requiring that landowners obtain a permit before engaging in short-term rentals, the law arbitrarily interferes with a property right and thus violates Plaintiffs' right to substantive due process under the state and federal constitutions.  Count Four alleges that the short-term rental law violates Plaintiffs' substantive due process rights by preventing them from renting their homes for more than 90 days per year, a restriction that Plaintiffs' claim is arbitrary.  Count Five is also a substantive due process claim, alleging that the permitting system "prohibits and curtails existing uses to which plaintiffs' properties were devoted and permitted at the time" the Defendants enacted the short-term rental law. Complt. at ¶ 178.  Count Six alleges that the short-term rental law violates Plaintiffs' substantive due process rights by requiring that landowners provide the name of a contact person for the property, subjecting Plaintiffs to liability for violation of that requirement, and defining the requirements for a contact person in a "vague, arbitrary[,] and irrational" way. Id. at ¶ 193.  Count Seven alleges a due process violation because, as written, enforcement of the short-term rental law "is sure to be arbitrary."  Id. at 203.  Count Eight alleges that the short-term rental law violates Plaintiffs' due process rights by permitting

Enforcement Officers "unilaterally" to "impose any conditions when [they issue] a short-term rental permit." Id. at ¶ 211.  Count Nine alleges the short-term rental law violates Plaintiffs' due process rights by imposing strict liability and by making landowners responsible for violations by their designated contact persons or short-term tenants.  Count Ten alleges that the short-term rental law violates Plaintiffs' procedural due process rights by permitting the Enforcement Officer to take action against Plaintiffs' right to rent their property without "sufficient due process protections." Id. at ¶ 242.  Count Eleven alleges an unconstitutional taking of Plaintiff's property through the 90-day cap on the number of days they can rent to short-term renters.  Count Twelve alleges unconstitutional violation of the contract clauses in the New York and federal constitutions.  Count Thirteen alleges a violation of Plaintiffs' First Amendment rights.  Plaintiffs seek damages, declaratory and injunctive relief, and attorneys' fees and costs.

After Plaintiffs served Defendants with the Complaint, they removed the case to this court.  Defendants thereafter filed the instant motion to dismiss.  The parties have briefed the issues, bringing the case to its present posture.

## II.    LEGAL STANDARD

Defendants have filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant argues that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true.  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."
Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting
Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  When, as here, the Plaintiff proceeds pro
se, the Court must "'construe [the complaint] broadly, and interpret [it] to raise the strongest
arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir.
2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)).[1]

## III.   ANALYSIS

Defendants seeks dismissal on several grounds, which the Court will address in
turn.

### A.   Ripeness

Defendants first argue that Plaintiffs' claims (1) regarding financial loss from the 90-
day cap on short-term rentals, (2) fear of loss of their permits under the law, (3) potential
for criminal penalties under the law, and (4) alleged arbitrary, unlawful intrusion on property
rights, including their ability to advertise and rent their property on a short-term basis are
unripe and therefore not justiciable by the Court.  They argue that Plaintiffs have not taken
advantage of the procedures available to them under State law to address their complaints
with the legislation and therefore cannot seek relief in this Court for their federal claims.
They seek dismissal of Counts One and Four through Eleven on this basis.  Plaintiffs
respond that, to the extent that their challenges are facial challenges to the constitutionality

---

[1]Defendants' briefing includes a discussion of the standard the Court is to use in
deciding whether to grant a preliminary injunction.  While Plaintiffs seek declaratory and
injunctive relief in their Complaint, no motion for a preliminary injunction is currently before
the Court.

of the regulations, they are ripe.  Moreover, Plaintiffs argue that they are not required to exhaust their administrative remedies under law recently clarified by the United States Supreme Court.

Defendants cite to law from the Supreme Court and in this Circuit that required a plaintiff to use available state procedures before bringing a federal claim related to government regulation that undermined property rights.  The rule had been that a plaintiff cannot bring a takings claims without showing "that (1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure."  Dougherty v. Town of N. Hempsted Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citing Williamson Cty. Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 (1985)).

Recently, however, the Supreme Court concluded that "a property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation by a local government."  Knick v. Twp. of Scott, 139 S.Ct. 2162, 2179 (2019).  Thus, "[a] plaintiff is no longer required to exhaust state procedures for obtaining just compensation before bringing her takings claim to federal court."  Martell v. City of St. Albans, 441 F.Supp.3d 6, 21 (D. Vt. 2020).  As the Second Circuit has explained, "*Knick* eliminated the state exhaustion requirement," but still requires that a plaintiff prove the first element, a showing "that a state regulatory agency . . . render[ed] a final decision on the matter before a taking claims can proceed."  Sagaponack Realty, LLC v. Vill. of Sagaponack, 778 Fed.Appx. 63, 64 (2d Cir. 2020).

That standard provides that "a takings claim 'is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the

application of the regulations to the property at issue.'" Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 122 (2d Cir. 2014) (quoting Williamson Cnty., 473 U.S. at 186). That requirement applies as well to "zoning challenges based on substantive due process." Id. The rule, however, "'is not mechanically applied' and will not be found to bar a suit when further appeals would be futile or when the relevant town board 'sits purely as a remedial body.'" Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd., 742 Fed.Appx. 521, 524 (2d Cir. 2018) (quoting Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 349 (2d Cir. 2005)).

As such, when it comes to the Plaintiffs' challenges to the law on due process, takings, and equal protection claims, Plaintiffs do not need to show that they sought just compensation by an available state procedure to bring suit. They must, however, show that an appropriate agency rendered a final decision on their applications.

To the extent that the Plaintiffs claims are facial challenges to the constitutionality of the short-term rental law, those claims are surely ripe. "'The ripeness doctrine serves 'to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 164 (2d Cir. 2006) (quoting Khodara Envt. Inc. v. Blakey, 376 F.3d 187, 196 (3d Cir. 2004)). In the context of a land-use decision, a facial challenge alleges "that the mere enactment of a regulation either constitutes a taking without just compensation, or a substantive violation of due process or equal protection[.]" Id. No "final decision" is necessary in that setting because "'when a landowner makes a facial challenge, he or she

argues that *any* application of the regulation is unconstitutional[.]'" Id. (quoting Eide v. Sarasota County, 908 F.2d 716, 724 n.14 (11th Cir. 1990) (emphasis in original)).  The motion will therefore be denied with respect to any facial challenges Plaintiffs make that allege the short-term rental law violates their rights to due process, equal protection, or to be free from an unconstitutional taking.

In reply to Plaintiffs' briefing, Defendants contend that "Plaintiffs' opposition papers acquiesce that their as-applied equal protection, due process and takings claims are unripe[.]" Defendants appear to misread Plaintiffs' argument.  Plaintiffs contend that their "federal claims (save for Plaintiffs' third cause of action discussed below), both facially and as applied, are ripe for adjudication."  Count Three alleges a substantive due process violation because property owners who seek to engage in short term rentals must obtain permits "to which any number of conditions could be" attached "by the Enforcement Officer."  Plaintiffs agree that these conditions have not yet been attached to any particular permit and the claims are therefore unripe.  The Court will therefore dismiss the third count without prejudice.   The Court will address the ripeness of other claims where appropriate.  As a general matter, the Court finds that facial claims are ripe, but that Plaintiffs must allege a final decision for any as-applied claims to be ripe.

### B.    Equal Protection

Defendants argue that the Court must dismiss Plaintiffs' equal protection claim, which alleges that the short-term rental law treats them differently from similarly situated homeowners.  Defendants contend that dismissal is required whether Plaintiffs proceed on a class-of-one or a selective enforcement equal protection theory.  Plaintiffs respond that

they state a claim under a class-of-one theory.

While the Equal Protection Clause usually applies "to governmental classifications that treat certain groups . . . differently than others," courts also apply "a class-of-one theory" that holds that "a single individual can claim a violation of her Equal Protection rights based on arbitrary disparate treatment." Fortress Bible Church v. Feiner, 694 F.3d 208, 221 (2d Cir. 2012). Such a claim exists when a plaintiff "'has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference." Id. (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "'[C]lass of one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" Ruston v. Town Bd. for the Town of Skeneateles, 610 F.3d 55, 59 (2d Cir. 2010) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). A plaintiff advancing a class-of-one claim must show: "'that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity of circumstances and difference of treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.'" Id. (quoting Clubside, 468 F.3d at 159).

Plaintiffs point to studies that indicate around 620 properties in Lake Placid and North Elba engage in short-term rentals, and that their properties are a sub-set of these 620 properties, making them substantially similar. The short-term rental law exempts some properties from the law's prohibition on rentals for more than 90 nights per year. The law provides:

Other than the safety regulations provided herein and in the New York State

13

> Building Code, the short-term rental standards set forth in Section 11.2A(2)[2] shall not be applicable to: (i) hosted short-term rental units which are those in which the host is resident and an owner who lives at the property for at least 184 days per calendar year and is home overnight during the term of each rental, (ii) condominium projects and town house projects which have an active homeowners' association, (iii) rental units on Main Street and Sentinel Road in the Village Center District (VC) and Wilmington Road, Cascade Road and Saranac Avenue in the Gateway Corridor District (GC), which rental units shall also be exempt from Section 11.2A(5).[3]

Exhibit A to Plaintiffs' Complaint, dkt. # 2, at § 11.6(C).  Plaintiffs allege that they do not fit into any of these exempt classes of property owners, but that they are nevertheless substantially similar.  Plaintiffs also allege that the Defendants have no rational basis for treating these property owners differently than they treat them.  See Complt. ¶¶ 76-77, 80-83, 85-92.

Defendants argue that these comparators are not substantially similar because they "either 1) reside within complexes maintaining a homeowners associations [sic]; 2) are located adjacent to the more heavily populated business districts; or 3) have a residential owner 'on site' for the vast majority of the year."  Plaintiffs allege that they and the "owners of property located on Main Street and Sentinel Road in the Village Center District (VC) and Wilmington Road, Cascade Road and Saranac Avenue in the Gateway Corridor District (GC) all own property in areas zoned for residential use."  Complt. at ¶ 89.  They also allege that they "pay property taxes and occupancy taxes upon any short-term rental

---

[2] Section 11.2A(2) of the law provides that "[n]o short-term rental property may be rented for greater than (90) days in any given calendar year."  See Exh. A to Plaintiff's Complaint, dkt. # 2 at § 11.2A(2).

[3] Section 11.2A(5) provides: "[t]here shall be only one short-term rental permit issued per property.  Thus if a property has more than one dwelling unit the permit issued shall be limited for one dwelling unit only."  Exh. A to Plaintiff's Complaint, dkt. # 2, at § 11.2A(5).

at rates identical to owners of" such properties.  Id. at ¶ 88.  Similarly, they pay the same

taxes as owner-occupiers who also provide short-term rentals.  Id. at ¶ 82.  They also point

out that the short-term rental law does not attempt to define an "active homeowner's

association."  Id. at ¶ 75.

While the Court recognizes that Plaintiffs must produce evidence of "an extremely

high degree of similarity between themselves and persons to whom they compare

themselves," courts also emphasize that "whether parties are similarly situated is a fact-

intensive inquiry" best resolved after the parties engage in discovery.  Clubside, Inc. v.

Valentin, 468 F.3d 144, 159 (2d Cir. 2016).  "The purpose of requiring sufficient similarity is

to make sure that no legitimate factor could explain the disparate treatment."  Fortress

Bible Church, 694 F.3d at 222.  In the pleading context, a plaintiff must offer "factual

allegations . . . sufficient to support the necessary legal conclusions," in this case that the

similarity between the various parties offering short-term rentals is sufficient to support a

"class of one" claim.  Ruston, 610 F.3d at 59.  Sufficient factual allegations must explain in

detail how the comparators are similar and how the defendants treated them differently.  Id.

In Ruston, the Court of Appeals concluded that the trial court properly dismissed a

class of one claim that alleged, in part, that plaintiffs faced "class of one" discrimination

because the defendant village refused their request to connect new homes they planned to

build on property they owned to the village's sewer system.  610 F.3d at 57.  The plaintiff

alleged that the village had permitted other structures to connect to the sewer system, and

that those properties were substantially similar.  The court disagreed that "a house built in

1987; a country club that was renovated in the 'the early 1990s'; two neighboring

properties–'connected to the Village sewer system for decades'–that are not further

described; a house built 'in or around 2004'; a 'luxury spa' built 'in the late 1990s; and a 'large commercial building'" were "similar to" plaintiffs' "proposed 14-home development, let alone so similar that no rational person could see them as different[.]" Id. at 60. The court noted that "some are commercial properties versus the residential properties at issue . . . and the residential connections were single homes, not a new development as proposed by the" plaintiffs. Id.

This case is different from Ruston. Here, Plaintiffs' complaint includes allegations that other homes in the municipalities, owned by individuals, offered for short-term rental, located in areas zoned for the same purpose as their homes, and taxed at the same rate, are substantially similar to properties that do not have the same restrictions on use that theirs do under the short-term rental ordinance. Plaintiffs also allege that the distinctions between which homes can have short-term rentals for ninety days and which cannot are arbitrary, and not based on rational calculations. These allegations make plausible Plaintiffs' claim that the short-term rental law creates distinctions between similarly situated owners of short-term rental property without a rational basis. At this preliminary stage in the litigation, such factual allegations are sufficient to state a "class of one" equal protection cause of action. The Court will deny the motion in this respect.

### C.    Unreasonable Search and Seizure

Defendants next seek dismissal of Plaintiffs' claim in Count Two that the short-term rental law violates their right to be free of unreasonable search and seizure. Defendants argue that the law does not require a search, but only provides that property owners consent to a search of the property as a condition of a permit. Because permit-holders consent to the search, they claim, no violation of Fourth Amendment rights occurs.

16

Defendants contend that the law does not violate Plaintiffs' Fourth Amendment rights because, as a condition of receiving a short-term rental permit, Plaintiffs "voluntarily and expressly consent to: 1) posting the permit for inspection; and 2) . . . an inspection of the rental space by the Enforcement Officer[.]"  The short-term rental law provides that as part of the procedure upon filing an application:

> In reviewing the application, if [sic] the Enforcement Officer shall have the right to inspect the short-term rental property for purposes of ensuring compliance with this section  If an inspection authorized herein is conducted, the Enforcement Officer shall use the results of such inspection in determining whether to issue the permit, with or without conditions, or to not issue the permit.

§ 11.2(D)(2).

Once the owner of the short-term property receives a permit, the law provides that:

> The Enforcement Officer or his designee shall have the right to inspect the short-term rental property to ensure it complies with the provisions of this section at any reasonable time of day upon giving reasonable notice to the owner or occupant of said unit.

§ 11.2(F)(9).  The law also requires that "[a] hard copy of the short-term rental permit shall be prominently displayed near the front entrance of the short-term rental unit.  The Enforcement Officer may also require that other information must be on prominent display in the short-term rental unit."  § 11.2(E)(2)(C).  The Village and Town "may . . . initiate enforcement proceedings under the Village of Lake Placid/Town of North Elba Land Use Code at any time following receipt of a complaint" and "[a]ny property owner found in willful violation of the provisions of this local law shall be required to reimburse the Town for its reasonable costs of enforcement, including reimbursement for staff time and reasonable attorney's fees."  §§ 11.2(F)(6), 11.2(F)(8).

At issue here is the Fourth Amendment.  That Amendment establishes "[t]he right of

17

the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures." U.S. CONST. AMEND. IV. The Supreme "Court has

repeatedly held that 'searches conducted outside the judicial process, without prior

approval by [a] judge or [a] magistrate [judge] are *per se* unreasonable . . . subject only to a

few specifically established and well-delineated exceptions.'" City of Los Angeles v. Patel,

135 S.Ct. 2443, 2451-52 (2015) (quoting Arizona v. Gant, 556 U.S. 332, 338 (2009)). The

search contemplated in the short-term rental law comes pursuant to local regulations.

Under those circumstances "absent consent, exigent circumstances, or the like, in order for

an administrative search to be constitutional, the subject of the search must be afforded an

opportunity to obtain precompliance review before a neutral decisionmaker." Id. "A

warrantless inspection of a private dwelling by a municipal administrative officer without the

consent of the owner is generally unreasonable absent specifically demonstrated

circumstances." Palmieri v. Lynch, 392 F.3d 73, 78-79 (2d Cir. 2004).

The Court finds that the Plaintiffs have, at this stage in the litigation, stated a claim

that the short-term rental ordinance violates their Fourth Amendment rights. As explained

above, the legislation compels them to allow warrantless searches of their property as a

condition of obtaining and maintaining permits to rent their property. Defendants argue

that any searches performed pursuant to the short-term rental law are excused because

property owners consent to them. This consent, however, is not a choice, but a legal

requirement. The permission to search that the property owner provides as a condition to

obtaining a permit does not make a warrantless search a consensual one. As the New

York Court of Appeals concluded in finding that an ordinance that required a landlord to

consent to search as a condition of obtaining a rental permit: "[a] property owner cannot

18

be regarded as voluntarily giving his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property." Sokolov v. Freeport, 52 N.Y.2d 341, 346 (1981). While discovery may reveal defenses to Plaintiffs' claim about the invalidity of the law, such as circumstances that compel the need to search without waiting for warrants, the Court must deny the motion at this point.

This case is like Weisenberg v. Town Bd. of Shelter Island, 404 F.Supp.3d 720 (E.D.N.Y. 2019). There, the plaintiffs claimed a violation of their Fourth Amendment rights by a local short-term rental ordinance that "requir[ed] vacation-rental owners to maintain their rental registries 'for examination by the Town, if requested,' subject to automatic fines and potential revocation of their rental licenses for non-compliance." Id. at 735. The court found that the plaintiffs had stated a claim and denied the motion to dismiss. Id. at 736. The court concluded that "[f]or an administrative-search regime like this one to comply with the Fourth Amendment, the government must also show that 'special needs . . . make the warrant and probable-cause requirements impraticable' and that the 'primary purpose' of the searches regime is '[d]istinguishable from the general interest in crime control.'" Id. (quoting Patel, 135 S.Ct. at 2452). The Court will therefore deny the Defendants' motion in this respect as well.

### D. Due Process

Defendants next seek dismissal of Plaintiffs' due process claims, which Plaintiffs allege in Counts Three through Ten. Defendants contend that Plaintiffs' causes of action fail to state a claim, whether considered as facial or as-applied challenges. Plaintiffs admit that their claim in Count Three is not ripe, and the Court will grant Defendants' motion in

that respect as unopposed.  The Court will address the other counts in turn, as necessary, addressing ripeness where appropriate and the substance of the claims as well.

### i.    Count Four

Count Four alleges that the 90-day cap on Plaintiffs' rentals established by the short-term rental law violates Plaintiffs' substantive due process rights.

"In assessing a substantive due process claim in the context of land use regulation," a court must be "'mindful of the general proscription that federal courts should not become zoning boards of appeal to review nonconstitutional land-use determinations by the Circuit's many local legislative and administrative agencies.'" Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (quoting Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir. 1995) (internal citations omitted)).  A party alleging a substantive due process violation in this context "must first establish a valid property interest within the meaning of the Constitution" and then show "that the defendant acted in an arbitrary or irrational manner in depriving him of that property interest."  Id.

The first question for the Court, then, is whether the regulations in question interfere with a valid property interest.  "Property interests protected by due process are neither created nor defined by the Constitution, 'rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Martz v. Incorporated Village of Valley Stream, 22 F.3d 26, 29 (2d Cir. 1994) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).  The Court of Appeals has not determined whether an interest in rental income constitutes a protected property interest. See Karol v. City of New York, 396 F.Supp.3d 309, 322 (S.D.N.Y. 2019).

Courts in this Circuit have been reluctant to reach that conclusion.  As the Court in

Weisenberg explained:

> Here, Plaintiffs argue that they have established their 'fundamental property right to rent out their homes under New York law. (Pls. Opp'n 15.)  In support of this argument, Plaintiffs rely on cases standing for the simple, yet separate, hornbook principle that ownership of real property includes a bundle of rights, one of which is the right to lease.  However, "New York zoning law appears to take into account the somewhat intuitive concept that 'a property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers.'" DLC Mgmt. [Corp. v. Town of Hyde Park, 163 F.3d 124, 130 (2d Cir. 1998)] (quoting Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1027, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)).  Accordingly, under New York law, a landowner has no vested right to the existing zoning status of her property unless she has made substantial expenditures in reliance on such zoning status.  Although cases applying this standard typically involve requests for residential-construction permits, the Court sees no reason why the same principle should not apply to a broad-based zoning restriction on temporary rentals.  Here, Plaintiffs do not allege that they made any such expenditures.  As Plaintiffs have failed to adequately allege a federally protectable property interest in the unlicensed renting of their homes for periods less than fourteen days, their substantive-due-process claim is dismissed.

Weisenberg, 404 F.Supp.3d at 733-34.

As a general matter, Plaintiffs allege that short-term rentals have long been an

expected and accepted use for property in the region and the Defendant municipalities.

Complt. at ¶ 141.  They also allege that they purchased their properties with the

expectation that they could use short-term rental income so that they could afford to

maintain those properties, and were engaging in such uses when the Defendants enacted

the short-term rental law.  Id. at ¶¶ 151, 153.  The 90-day rental cap lacks a rational basis,

they claim, because that cap "economically idles a large portion of a property in a

municipality with year round tourist marketability thereby depriving Plaintiffs, and others

similarly situated, of income from property purchased and priced with rental income in

mind."  Id. at ¶ 155.

Plaintiffs' position, then, is that limits on short-term rentals deprives them of a property interest because they purchased their properties with an understanding that there would be no limits on the number of days they could offer them as short-term rentals. Preventing them from using the properties for that purpose for more than 90 days in a year would prevent them from using the property as intended.   Like the plaintiffs in Weisenberg, they point to general principles of property ownership and use long established in New York law to argue that they have a protected property interest in short-term rentals without limitation.  They do not allege that they made specific improvements or changes to the properties in anticipation of renting on a short-term basis.  They do allege, however, that they relied on a long-term practice in the region of short-term rentals in deciding to purchase the properties, and that the short-term rental law undermined those calculations.

The Court concludes that discovery would be necessary to determine whether Plaintiffs have a protected property interest in short-term rental income, and in that sense Plaintiffs have alleged facts that make plausible their right to relief in this respect.  The Court recognizes that courts in this Circuit have not determined that the right to rental income is a protected property interest.  The Court notes that the purchase and ownership of property does not immediately convey an unassailable set of rights that are immune to regulation.  A plaintiff certainly cannot claim a property right in using a property in a way that regulation and custom did not allow at the time of purchase.  Making all inferences in the Plaintiffs' favor, however, the Court finds that Plaintiffs have alleged that they purchased property that had customarily been used for the very purposes which they intended to utilize it, and that Defendants subsequently instituted regulations which undermined their ability to make use of the property in the intended way.  The Court must

22

therefore find that Plaintiffs have alleged sufficient facts to make plausible that the short-

term rental law implicated a protected property interest.

The next question for the Court is whether Plaintiffs have plausibly alleged that

Defendants acted in an arbitrary and irrational way in depriving them of their property

interest.  To meet that standard when the challenge to the ordinance is a facial one,

Plaintiffs must demonstrate that "the regulation lacks any relationship to a legitimate

government interest."  Kittay v. Giuliani, 112 F.Supp.2d 342, 352 (S.D.N.Y. 2000).

Plaintiffs contend that the short-term rental ordinance does not meet this standard.

Plaintiffs' Complaint alleges that

44.    The Lake Placid/North Elba Development Commission was created by the
       Village of Lake Placid and Town of North Elba Municipal boards in August of
       2014.
45.    The Commission obtained two studies from Camoin 310 including a
       Community Housing Needs Assessment and Short-term Rental Study.
46.    The Community Housing Needs Assessment found that second-home
       ownership levels are trending upwards along with a growing number of short-
       term rentals in the community (Id.)
47.    In turn, the same consultant analysis determined that short-term rentals had
       the potential to exacerbate existing housing affordability and availability
       issues for the workforce, which must be balanced with the positive benefits
       short-term rentals provide community (Id.).

Complt. at ¶¶ 44-47.  The Complaint then goes on to describe the process of passing the

short-term rental law, which the Complaint abbreviates as the "STR Law."  Id. at 48-54.

Plaintiffs then allege that:

55.    As set forth in the STR Law, the purpose of the local law is "to regulate the
       short-term rental dwelling units within the Village of Lake Placid and Town of
       North Elba and to establish comprehensive and licensing regulations" against
       extensive short-term rentals that "endanger" the historical and residential
       character of the "residential resort community."

. . .

23

58.   The STR Law prohibits a short-term rental property to be rented greater than ninety (90) days in any given calendar year.  However, this greater than ninety (90) day restriction is not applicable to the following:

a.   Hosted short-term rental units which are those in which the host is a resident and an owner who lives at the property for at least 184 days per calendar year and is home overnight during the term of each rental,

b.   Condominium projects and town house projects which have an active homeowners' association,

c.   And rental units on Main Street and Sentinel Road in the Village Center District (VC) and Wilmington Road, Cascade Road and Saranac Avenue in the Gateway Corridor District (GC), which rental units shall also be exempt from Section 11.2A(5).

Id. at ¶¶ 55, 58.

Plaintiffs argue that:

The 90 total rental days cap does not rationally serve to 'establish comprehensive registration and licensing regulations' of short-term rental properties, "applicable to all properties in all districts within the Village of Lake Placid and Town of North Elba" safeguarding the public health, safety and welfare by regulating nor does the cap rationally serve "achieving a balance between those that rent for short-terms and those that do not."  The 90-day cap as alleged throughout Plaintiffs Complaint, does not apply to all properties and districts of Defendants locales; that provision is excluded for certain streets, and "active" homeowner's [sic] associations.  The 90-day cap, and its resultant economic damage, as alleged in Plaintiff's Complaint is not commensurately linked to demand (Complaint Para. 23, 25, 27), or past allowed use including the average number of rental days across the spectrum of short-term rentals.

Plaintiffs' Brief, dkt. # 10, at 12-13.

The Court finds that Plaintiffs have failed to allege that Defendants' ordinance is not rationally related to a legitimate governmental interest.  Plaintiffs here contend that the ordinance is not applicable to all properties and districts in the Village of Lake Placid and the Town of North Elba because only some properties are subject to the 90-day cap on short-term rentals.  They also complain that the 90-day cap fails to account for past uses or demand for such short-term rentals, and that limiting such rentals fails to achieve the

24

ordinance's aim of finding a balance between different types of rentals.  Plaintiffs are correct that the ordinance does not treat all properties and districts the same, but that does not mean that the ordinance in question fails to create a scheme that addresses the entire jurisdiction, nor does treating properties in different locations differently indicate that the restrictions in the statute fail to bear a rational relation to legislator's aim of finding a way to balance the demand for short-term rentals from visitors and homeowners in the community with the interests of others in the community in affordable housing and more stable residencies.  Moreover, they implicitly acknowledge that Defendants had a legitimate state interest in attempting to balance the interests of those living in, working in, and visiting the area in obtaining and maintaining housing.

In the end, Plaintiffs argue that the decisions that community planners made regarding the use of properties in Lake Pacid and North Elba were bad ones that failed to account properly for the interests of those who would like to rent their properties on a short-term basis for more than ninety nights in a year.   They may be right, and they may also be correct that limiting such uses will not eliminate the problems that town planners hope to address.  The Court's role here, however,  is not to resolve the dispute between the Plaintiffs and the town officials about what the best zoning policy would be; to do so would be to turn the Court into the sort of zoning appeals board prohibited by the case law.  The question for the Court is whether the short-term rental ordinance is rationally related to a legitimate government interest.  The Court finds that Plaintiffs have alleged facts which admit that the ordinance is rationally related to the Defendants' interest in planning how to use land in a way that balances the interests of homeowners, renters, and short-term visitors.  That Plaintiffs have alleged that the Defendants made a bad choice in their

ordinance is not an allegation that their choice was irrational and unrelated to a legitimate state interest.  The Court will grant the motion with respect to this claim.

To the extent that the claim is an as-applied one that argues that the 90-day limit has been applied in an unconstitutional manner to their properties, the Court will also grant the motion to dismiss.  First, Plaintiffs have not alleged that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the propert[ies] at issue[.]"  Sunrise Detox, 769 F.3d at 122.  Even if Plaintiffs had alleged such a final judgment, they have not alleged conduct that would constitute a substantive due process violation.  "'Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised.'" Cunney v. Bd. of Trs. of Grand View, 660 F.3d 612, 626 (2d Cir. 2011) (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995)). In the context of a zoning dispute, a plaintiff alleging a substantive due process violation must "show that the [defendant's] action in depriving it of that interest was 'so outrageously arbitrary as to be a gross abuse of governmental authority.'" Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999) (quoting Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999)). Plaintiffs' allegations here are that the conduct was ill-advised, not conscience-shocking. The Court will grant the motion with respect to this count.

ii.    **Count Five**

Count Five alleges that Defendants violate Plaintiffs' substantive due process rights by limiting their ability to rent their properties and then conditioning any rental on improvements to the properties that Plaintiffs cannot recover during the limited periods in

which they can rent their properties.

Plaintiffs allege that:

170.   The STR law allows in Section 11.2(D)(30 and (D)(5)(h0), discretionary placement of conditions, including building enhancement, by the zoning enforcement officer ZEO [sic] to any short-term rental permit.

171.   Upon information and belief, the Town of North Elba and Village of Lake Placid zoning officer has placed conditions onto properties including the installation of fire escapes, evacuation egress windows, second sets of stairs, the cost of which greatly exceeds $10,000 (see Exhibit C).

172.   Upon information and belief, the Enforcement Officer has unilaterally reclassified properties seeking to engage in short-term rentals as R-1 structures relative to the New York State Building Code, outside of legislative action, pursuant to the NYS Building Code thereby preventing the issuance of a short-term rental permit and continuance of previously allowable use.

Complt. at ¶¶ 170-172.  Plaintiffs also complain that they purchased their homes with the expectation that they could use them for short-term rentals, and that the limit of 90 days per year of rentals undermines their ability to afford those homes.  In that way, they claim, "the STR law violates Plaintiffs' rights to substantive due process, both on its face and as applied, to the extent ti extinguishes or irrationally interferes with Plaintiffs' investment backed expectations in acquiring their properties and previously permitted uses at the time of acquisition."

To the extent that Plaintiff's claim is a facial substantive due process challenge to the ordinance's limitation on the number of days that Plaintiffs can rent their property on a short-term basis, this claim fails for the same reasons as explained in Count Four.

To the extent that this claim is an "as applied" challenge to the ordinance, the claim is not ripe.  Plaintiffs have not alleged that the decision of the zoning officer was final, or described any zoning appeals they undertook.  The claim will be denied as unripe.  Even if the claim was ripe in this respect, the Court would grant the motion.  Plaintiffs allege that

27

the enforcement has either placed conditions on use that prevent them from renting their properties or reclassified their properties in ways that make them ineligible for short-term rental. The allegations here are that the zoning officer exercised authority and reclassified properties in a way that may have been contrary to New York law. The Complaint does not allege that the zoning officer engaged in any outrageous or arbitrary behavior or grossly abused the office. The Plaintiffs simply complain that the officer's decision cost them money and was in error. Such allegations do not make a violation of Plaintiffs' substantive due process rights plausible, and the Court would grant the motion in this respect as well.

Plaintiffs also allege that the ordinance's:

179.   . . . 90 day stay of enforcement as measured from the effective date is an unreasonable, irrational, and insufficient amortization period; accordingly, the STR law prohibits or irrationally curtails existing uses to which Plaintiffs' properties were lawfully devoted and permitted at the time of the STR law's enactment all in violation of Plaintiffs' substantive due process rights, both facially and as applied.

180.   The Town of North Elba and Village of Lake Placid have no rational basis for the absence of grandfathering provisions in the STR law and resulting immediate extinguishment of rights relative to the Plaintiffs' previously permitted uses of their properties as short-term rentals.

Comptl. at ¶¶ 179-180.

This claim also fails to allege a facial violation of Plaintiff's substantive due process rights. The allegation that there was no rational basis for the provisions is merely conclusory, and Plaintiffs connect no facts to this claim. The Court will grant the motion to dismiss in this respect as well.

### iii.     Counts Six, Seven and Eight

Plaintiffs argue that they have plausibly alleged that different sections of the ordinance are void for vagueness in Counts Six, Seven, and Eight.

"A component of the Due Process Clause, 'the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" Copeland v. Vance, 893 F.3d 101, 110 (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)).  To prove unconstitutional vagueness, a plaintiff must show "that the statute either 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or 'authorizes or even encourages arbitrary and discriminatory enforcement.'" Id. (quoting Hill v. Colorado, 530 U.S. 703, 732 (2000)).  While most void-for-vagueness challenges address how officials applied the statute to an individual, "a party may also challenge a statute as vague *on its face* asserting that it is 'so fatally indefinite that it cannot constitutionally be applied to anyone." United States v. Requena, 980 F.3d 29, 39 (2d Cir. 2020) (quoting Copeland, 893 F.3d at 110) (emphasis in original); see also, Sanitation & Recycling Indus. v. City of New York, 107 F.3d 985, 992 (2d Cir. 1997) (quoting New York State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 11 (1988) (a successful facial challenge requires a showing "that the challenged law 'could never be applied in a valid manner.'")).  Because of this requirement, "a facial challenge to a legislative enactment is 'the most difficult challenge to mount successfully.'" New York State Rifle & Pistol Ass'n v. Cuomo 804 F.3d 242, 265 (2d Cir. 2015) (quoting United States v. Salerno, 481 US 739, 745 (1987)).

Count Six alleges that Defendants violate Plaintiffs' substantive due process rights by a requirement that Plaintiffs "designate a 'contact person' who 'must be located within sixty minutes distance by car' and 'be available 24 hours per day, 7 days a week'" because such a requirement "is vague, arbitrary and irrational on its face and as applied to

Plaintiffs."  Complt. at ¶ 193.  Plaintiffs complain that this the requirement "fails to define 'available,' lacks context regarding the measurement of 'sixty minutes by car,' unreasonably restricts the movements of the 'contact person['] and deflates the availability of those citizens . . . entitled to be eligible thereby allowing arbitrary enforcement in the nature of criminal penalties[.]"

The Court will grant the motion to dismiss with respect to Court Six.  A reasonable person would understand that "available" means in this context "readily obtainable; accessible."  RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED ED. (1979).  A contact person for the property must be capable of being reached to address any problems with the property.  To be within sixty minutes by car means that the contact person must be able to get in a car and drive to the property in question in an hour or less. While Plaintiffs may find such requirements onerous, they have not alleged that the statute is so vague that a reasonable person could not understand what conduct the ordinance prohibits. Nothing about the allegations in the Complaint indicates that the statute could never be applied in a constitutional manner, and Plaintiffs' void-for-vagueness claim fails on this count.  The statute also does not create a danger of arbitrary enforcement in this respect.  An enforcement officer who could not reach the contact person by telephone or email would find that the contact person was unavailable in violation of the statute.  If the enforcement officer reached that person by those means, no violation of the statute would occur.  Similarly, if the contact person could not drive to the property within an hour when the enforcement officer requested, the officer would find a violation.  If the contact person arrived within an hour, the officer would not find a violation.  Plaintiffs have failed to state a facial void-for-vagueness claim on this Count.

Count Seven alleges that the short-term rental law violates Plaintiffs' due process rights because, as written, the statute permits or encourages arbitrary enforcement. Plaintiffs point to Section 11.2 of the ordinance, and allege that:

> 198.   . . . anyone may complain that a property engaged in short-term rentals is in violation of the STR law or property's STR law permit by contacting the "contact person designated on the permit, a law enforcement agency, the code enforcement officer or any other person or entity which could assist in resolving [a] complaint, describe the problem from which the complaint arises and indicate the desired remedy."
>
> 199.   The STR law, in turn, provides that the contact person shall within sixty minutes of receiving the complaint, respond to the complaint and remedy as soon as reasonably possible any situation that is out of compliance with these regulations or with the permit for the property.
>
> 200.   The STR law then also provides: "If the response is not satisfactory to the complaining party the complaining party may file a complaint with the enforcement officer."
>
> 201.   Further, Section 11.2(A)(6) of the STR law stated: "If the terms of the short-term rental permit are not followed, or these regulations or those subsequently adopted are not followed, the short-term rental permit may be revoked and the owner shall be subject to the penalties provided in Section 9 of the Village of Lake Placid/Town of North Elba Land Use Code."
>
> 202.   [enforcement includes criminal penalties of fines not to exceed $350 and up to six months imprisonment for the first offense, a fine of $350-$700 and up to six months imprisonment for a second offense within five years, a fine of $700-$1000 and up to six months imprisonment for a third or subsequent offense within 5 years.  That matters will be treated as misdemeanors "for the purpose of conferring jurisdiction upon courts and judicial officers generally.").

Complt. at ¶¶ 198-202.  Plaintiffs contend that the language of the statute guarantees that "enforcement of the" ordinance "is sure to be arbitrary in violation of Plaintiffs' due process rights. Id. at ¶ 203.  They argue that the requirement of a "satisfactory" response within sixty minutes to any complaint "is a vague, arbitrary and irrational statutory requirement involving subjective definitions not rationally related to any legitimate government interest[.]"  Id. at ¶ 204.  Requiring that the response be "satisfactory to the complaining party" also allegedly "delegates policy matters" and violates Plaintiffs' due process rights.

31

Id. at ¶ 206.

Plaintiffs explain their complaint here is that the requirement that a property owner respond to a complaint in a "satisfactory manner" or face action from the zoning officer "authorizes or even encourages arbitrary enforcement in violation of due process pursuant to the void for vagueness doctrine."  The Court is not persuaded that there are no circumstances where the statute could operate constitutionally.  First, while the statute does not make clear what responding to a complaint in a "satisfactory" manner entails, such language itself does not prevent the property owner from understanding how to comply with the law.  The property owner must know from this language that a complainant can raise an issue and demand that the owner fix the problem to the complainant's satisfaction.  Given the myriad of problems that might occur with a property, the law necessarily leaves space for different issues and lets the renter and the owner determine when a particular problem has been resolved.  As an example, if a tenant complains that a faucet leaks, a property owner could reasonably understand that a satisfactory resolution of the problem would be stopping the leak.  In any case, the enforcement scheme in the statute, laid out above, indicates that a failure to resolve the problem in a satisfactory way does not lead to an automatic penalty, but to the involvement of the enforcement officer. An automatic violation does not follow in every instance, and the enforcement officer does not need to accept a complaint's claim of a less-than-satisfactory response.  Under those circumstances, the Court finds that Plaintiff has not alleged that the ordinance could never be enforced in a constitutional manner.  The motion will be granted with respect to Count 7.

Court Eight alleges that the short-term rental law violates Plaintiffs' due process rights by permitting the "delegation of enforcement to a private entity with proprietary

internal rules, regulations and procedures," which then "permits or encourages arbitrary and erratic enforcement by placing virtually unfettered discretion in the hands of the enforcement officer, or private entity, to either permit or deny a citizen and property owner the right to engage in short term rentals[.]"  Plaintiffs' briefing does not explain how this delegation is unconstitutionally vague, and alleges that the language permits arbitrary enforcement in only a conclusory way.  In any case, the Court cannot find that permitting discretion to an enforcement officer to investigate and initiate proceedings related to a variety of property violations permits arbitrary enforcement.  The ordinance defines the requirements for property maintenance, property conditions, and notices that short-term rentals must provide.  That gives guidance and limits to enforcement officers, despite the obvious need to provide flexibility in enforcement.  Under those circumstances, the Court cannot find that Plaintiffs have alleged that the statute permits such arbitrary enforcement that enforcing the ordinance would be unconstitutional under all circumstances.  The Court will grant the motion to dismiss with respect to Count Eight as well.

### vi.    Count Nine

Count Nine alleges that the short-term rental law establishes strict criminal liability for violations of the statute by the property owner or another person acting for the property owner.  Plaintiffs claim that these provisions violate their due process rights by imposing vicarious criminal liability.

The provision about which Plaintiffs complain provides the following:

> If the terms of the short term rental permit are not followed, or these regulations or those subsequently adopted are not followed, the short-term rental permit may be revoked and the owner shall be subject to the penalties provided in Section 9 of the Village of Lake/Placid Town of North Elba Land Use Code, as well as the penalties set forth below.

33

Ordinance at § 11.2(A)(6).   According to the Plaintiffs, Section 9 of the Land Use Code

provides that "[a] violation of this Code is hereby declared to be an offense, punishable by

a fine not exceeding three hundred fifty dollars ($350) or imprisonment for a period not to

exceed six months, or both for conviction of a first offense[.]" Plaintiffs' Brief, dkt. # 10, at

17 (quoting Land Use Code at Section 9).

Plaintiffs cite to People v. Byrne, 77 NY2d 460 (1991), to argue that the ordinance

violates their due-process rights by imposing vicarious liability on them.  There, the Court of

Appeals addressed whether the owner of a liquor store could be liable under a New York

laws that imposed strict liability for the sale of alcoholic beverages to minors; "proof of the

accused's knowledge or intent is not required[.]"  Id. at 463.  Under those circumstances,

the court asked 'whether these statutes also create a crime of 'vicarious liability,' permitting

conviction of a natural person for the acts of another solely because of the parties'

business relationship."  Id.  The court concluded that vicarious liability was not available

under the statute in question since "where the Legislature has not clearly and specifically

mandated otherwise, statutes defining criminally punishable offenses should . . . be

construed to require some personal participation by the accused in the prescribed act."  Id.

at 467.  The court noted, however, that "we stress that our decision in this case does not

represent a policy-based rejection of the use of vicarious liability theories in criminal

prosecutions[.]"  Id.  The wisdom of passing such laws, the court emphasized, lay "within

the purview of the Legislature's judgment, provided, of course, that the constraints of due

process are observed."  Id.

The Court is unpersuaded by the Plaintiffs' argument in this respect.  The Court

notes that Plaintiffs' challenge here is a facial one.   A party raising a facial due process

challenge to a government policy "'bears [the] heavy burden' of demonstrating that, as written, the Policy 'could <u>never</u> be applied' in a manner that would afford claimants constitutionally adequate" procedures.   <u>N.Y. State NOW v. Pataki</u>, 261 F.3d 156, 171 (2d Cir. 2001) (quoting <u>Sanitation & Recycling Indus., Inc. v. City of New York</u>, 107 F.3d 985, 992 (2d Cir. 1997) (alterations and emphasis in original)).   Even assuming the Plaintiffs are correct that the statute imposes vicarious liability on property owners, the case the Defendants cites establishes that the mere imposition of such liability does not violate an accused's due process rights in every instance.   <u>Byrne</u> simply finds that a statute that imposes vicarious liability may not be enforced under some circumstances.   As such, Plaintiffs have not alleged facts making a facial due process challenge plausible under the circumstances, and the Court will grant the motion with respect to this claim.

> ### vii.   Count Ten

Count Ten alleges that the short-term rental law violates Plaintiffs' procedural due process rights by permitting the revocation of Plaintiffs' right to lease their properties on a short-term basis while their appeals of Enforcement Officers' decisions are pending. Plaintiffs describe this claim as a "facial challenge," since the ordinance has not yet been applied.   They contend that the statute is unconstitutional because the ordinance "purports to allow the zoning enforcement officer the power to unilaterally suspend a short-term rental permit, revoke a short-term rental permit, or place additional conditions upon his or her subjective finding of a violation of a rental permit or the" ordinance.   Plaintiffs argue that the law is invalid because their "opportunity to be heard" on the permit revocation comes "after the zoning enforcement officer had already interfered with Plaintiffs' vested property rights."   While a property owner has an opportunity in the law to contest the suspension,

that suspension "would remain in effect in addition to the prospect of significant criminal penalties" during the appeal.  That sort of suspension represents a deprivation of a significant property interest without a hearing and violates the procedural portion of the due process clause.

A procedural due process claim has two elements: "'1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause: and, if so, 2) whether existing state procedures are constitutionally adequate.'" Ford Motor Credit Co v. N.Y. City Police Dep't, 503 F.3d 186, 190 (2d Cir. 2007) (quoting Kapps v. Wing, 404 F.3d 105, 112 (2d Cir. 2005)).  "The Due Process Clause does not demand that the government provide the same kind of procedural protections for every deprivation of a property or liberty interest."  Weinstein v. Albright, 261 F.3d 127, 134 (2d Cir. 2001).  "At a minimum, due process requires that the government provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. (quoting Mullane v. Central Hannover Bank Trust Co., 339 U.S. 306, 314 (1950)).

The ordinance provides the following enforcement procedures:

F.     Compliance, Hearings and Penalties.  Owners of short-term rental units shall obey all applicable laws, ordinances and regulations of the Village of Lake Placid, Town of North Elba, Essex County, New York State and the United States of America, and shall be subject to the enforcement and penalty provisions contained in the Village of Lake Placid/Town of North Elba Land Use Code and any other state or local law.

The following process shall be followed in the event of a complaint alleging a violation of these regulations or a permit issued under these regulations:

(1)     The complaining party may contact the contact person designated on the permit, a law enforcement agency, the Code Enforcement Officer or any other person or entity which could

assist in resolving the complaint, and describe the problem from which the complaint arises and the desired remedy.

(2)     The contact person shall, within sixty minutes of receiving the complaint, respond to the complaint and remedy as soon as reasonably possible any situation that is out of compliance with these regulations or with the permit for the property.  the First Dispatch will have the names and contact information for each contact person to provide to a complaining party.

(3)     If the response is not satisfactory to the complaining party (including the inability to promptly reach the contact person), the complaining party may file a complaint with the Enforcement Officer by submitting a written complaint.  The form of the complaint shall be established by the Enforcement Officer and may be filed in person, by mail, by email or online.  The complaint shall provide pertinent information including the date, time and nature of the alleged violation as well as a statement that complainant either unsuccessfully attempted to contact the person or did contact the contact person but the complaint was not adequately resolved.  A failure to attempt to contact the contact person will not excuse a violation.

(4)     If the Enforcement Officer finds a violation of the permit or of this section, the Enforcement Officer may do any of the following depending on the circumstances:

(a)     Attach reasonable conditions to the existing short-term rental permit;

(b)     Suspend the short-term rental permit;

(c)     Revoke the short-term rental permit; or

(d)     Issue a violation or warning.

(5)     Should a permit be revoked, none of the owners of the short-term rental property may obtain any short-term rental permit sooner than one year after the date of revocation.

(6)     The Village of Lake Placid or the Town of North Elba may also initiate enforcement proceedings under the Village of Lake Placid/Town of North Elba Land Use Code at any time following receipt of a complaint.

(7)     Decisions of the Enforcement Officer will be provided to the parties and may be appealed, within 30 days of receipt of the decision, by the owner or by the complainant in accordance with Section 11.3.

(8)     Any property owner found in willful violation of the provisions of this local law shall be required to reimburse the Town for its reasonable costs of enforcement, including reimbursement for staff time and reasonable attorney's fees.

(9)     The Enforcement Officer or his designee shall have the right to inspect the short-term rental property to ensure it complies with

> the provisions of this section at any reasonable time of day upon giving reasonable notice to the owner or occupant of said unit.

Short Term Ordinance, Exh. B to Complaint, dkt. # 2, at § 11.2(F).  The ordinance also describes the appeals procedures for disputes about short term rentals.  See Id. at § 11.3.  That section provides, in relevant part, that "[d]ecisions and determinations made by the Enforcement Officer under Section 11 shall be made in writing and provided to the owner and complainant, if any."  Id. at § 11.31(D).  "Said decision/determination may be appealed to the STR Appeals Board within thirty (30) days of receipt of the decision."  Id.  The statute also provides that a decision of the Enforcement Officer may be "stayed" if "the STR Appeals Board agrees to grant appellant a stay upon his/her/its application for such stay."  Id.

Even assuming that Plaintiffs have a protected property interest in short-term rental income, the ordinance has enforcement procedures in place that attempt to address the requirement of notice and an opportunity to be heard.  Plaintiffs claim that they suffer a deprivation without due process when the Enforcement Officer suspends their rental permit and they have to wait to appeal that decision to the Appeals Board.   The ordinance, as described above, has a clearly delineated procedure for identifying violations.  Any complaint about a property, however raised, results in notification of the contact person listed on the permit.  The contact person then has an opportunity to rectify the condition before any enforcement action occurs.  A formal complaint appears only if the contact person fails to respond or fails to respond to the satisfaction of the complaining party.  The formal complaint provides information on the nature of the alleged violation.  The Enforcement Officer can take action that includes revocation of the permit, but the

ordinance has an appeals process in place.  A property owner can seek a stay on any enforcement action while this appeal goes forward.

The Court finds that Plaintiffs fail to state a claim in their Complaint that the Enforcement Officer may suspend their rental permit upon finding a violation.  First, the ordinance makes clear that notice procedures are in place before any initial enforcement action.  Indeed, the procedures provide a property owner with an opportunity to rectify any non-conforming condition before the Enforcement Officer takes any action.  While Plaintiffs may complain that they have too little time to solve a problem and that the use of a contact person may not be practical under the circumstances, this challenge is facial, and not an as-applied one.  Plaintiffs must show that the ordinance "'could <u>never</u> be applied' in a manner that would afford claimants constitutionally adequate" procedures.  <u>N.Y. State NOW</u>, 261 F.3d at 171 (2d Cir. 2001) (quoting <u>Sanitation & Recycling Indus., Inc.</u>, 107 F.3d 985, 992).  The Court cannot find that here.  Moreover, a property owner facing any sort of an enforcement action has the ability to challenge any sanction assigned to the Appeals Board within thirty days of the action.  Such a property owner can also seek a stay of the enforcement action until resolution of the appeal.  Under the circumstances, the Court finds that the procedures in question provide reasonable notice and an opportunity to be heard before the deprivation occurs.  The fact that the deprivation might occur pending resolution of the appeal is not unreasonable under the circumstances.  The ordinance regulates the condition of rental properties and thus implicates public safety.  Under some circumstances, quick and decisive action is necessary to protect renters from unsafe conditions.  The ordinance balances that need for quick action with appellate procedures that include stays on enforcement.  The Court must find that there are conditions under

which the law could be applied in a constitutional manner and will dismiss the facial procedural due-process challenge to the ordinance.

E.    Takings Claim

Defendants also seek dismissal of Plaintiffs' Fifth Amendment "takings clause" claim.  They argue that Plaintiffs have failed to plead a takings claim because they have not alleged a loss that constitutes a taking within the meaning of that clause.

"The Takings Clause of the Fifth Amendment provides that no 'private property shall be taken for public use, without just compensation.'" Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 373 (2d Cir. 2006) (quoting U.S. CONST. AMEND. V).  "The clause applies to the states through the Fourteenth Amendment."  Id.  At issue here is a "regulatory taking," where a "state regulation goes too far and in essence effects a taking." Sherman v. Town of Chester, 752 F.3d 554, 564 (2d Cir. 2014) (internal quotations omitted).  Two types of regulatory takings exist: "'categorical and non-categorical takings.'" Id. (quoting Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1378 n.2 (Fed. Cir, 2008)).  This case involves a non-categorical taking, which involves "'[a]nything less than a complete elimination of value, or a total loss.'" Id. (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 330 (2002)).  Analysis of such a taking "'requires an intensive ad hoc inquiry into the circumstances of each particular case.'" Id. (quoting Buffalo Teachers Fed'n, 464 F.3d at 375).  Courts "'weigh three factors'" in deciding whether a taking occurred.  Id. (quoting Buffalo Teachers Fed'n, 464 F.3d at 375).  They examine: "'(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.'" Id. (quoting Buffalo Teachers Fed'n, 464 F.3d at

40

375).

Plaintiffs contend that the ordinance causes them a strong economic impact by limiting their ability to obtain short-term rental income to half the number of days previously available.  Economic harm, they claim, comes to more than $10,000 annually.  This regulation has undermined their expectations on investing in the properties; they expected the short-term rental income to make their Lake Placid homes affordable.  The character of the government action, particularly in capping the rental days, is arbitrary, as is the time period permitted for amortization.  Defendants respond that the amount of Plaintiffs' loss is insufficient for a takings claim.

As to the first factor, the economic impact of the regulation, Plaintiffs allege that the regulatory scheme Defendants implemented will prevent them from earning as much from short-term rentals as they had expected when they purchased their properties.  "[I]t is well settled that a 'taking' does not occur merely because a property owner is prevented from making the most financially beneficial use of a property."  Kabrovski v. City of Rochester, 149 F.Supp.3d 413, 425 (W.D.N.Y. 2015).  Instead, "where a landowner alleges that certain land-use regulations effect a facial taking, he must show that the very language of the regulations 'denies the owner of essentially all economically viable use of his land.'" Kittay v. Giuliani, 112 F.Supp.2d 342, 350-51 (S.D.N.Y. 2000) (quoting Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 295-96 (1981)).  Here, making all inferences in Plaintiffs' favor, they allege that the regulations prevent them from maintaining ownership in the property and thus making economic use of that property.  The regulations will force them to sell the property.  At this stage of the litigation, before any discovery, the Court must conclude that this factor favors the Plaintiffs.

41

As to the second factor, the Plaintiffs have alleged that the purchased the properties in question with the expectation that they would be able to recoup their investment through short-term rentals.  When they purchased the properties, no limits existed on the number of days per year that the properties could be rented.  The regulation limiting the number of days of short-term rental interfered with this reasonable investment-backed expectation.  This factor favors a finding of regulatory taking.  The Plaintiffs "could not have expected" the ordinance's interference with short-term rentals, which "pushed them to the brink of" losing their homes.  Sherman, 752 F.3d at 565.

As to the third factor, courts find that "'[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.'" Id. (quoting Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978)).  As to this factor, Plaintiffs argue that "the imposition of a 90-day cap upon Plaintiffs–a subset of the short-term rental market involves [an] arbitrarily set number and [is] not rationally related to Defendants['] stated interest in passing the" ordinance.  That argument appears to concede, in part, that the Defendants had a legitimate governmental interest in instituting short-term rental regulations.  At the same time, the Plaintiffs insist that the Defendants had no legitimate interest in limiting only some properties to 90 days of short term rental.  At this point in the litigation, the Court finds that this factor weighs neither for nor against a finding of a regulatory taking.  Discovery is necessary to determine the nature of the governmental action about which Plaintiffs complain.

Having considered the relevant factors, the Court concludes that the Defendants

have alleged enough facts to make plausible their regulatory takings claim.  The Court will deny the motion in this respect.

### F.  Contracts Claim

Defendants also seek dismissal of Plaintiffs' contracts clause claim.  They argue that the ordinance does not substantially impact the Plaintiffs because they can still rent their properties on a short term basis, just not for as many nights as they would like. Moreover, the ordinance's restrictions on such short-term rentals serve the significant public purpose of curtailing public nuisances such as noise and parking shortages, protecting public health, and keeping the character of neighborhoods.  Finally, Defendants claim, the ordinance uses reasonable and appropriate means to achieve this purpose.

"Article I, Section 10 of the Constitution provides in pertinent part: 'No State shall . . . pass any . . . Law impairing the Obligation of Contracts.'" Sal Tinnerello & Sons, Inc. v. Town of Stonington, 141 F.3d 46, 52 (2d Cir. 1998).  "Though the Contract Clause is phrased in absolute terms, the Supreme Court has not interpreted the Clause absolutely to proscribe any impairment of either private or government contracts." Id.  Because the government may use state power to protect citizens, "the Clause is not violated unless the impairment is a substantial one." Id.  In deciding whether a statute violates the contracts clause, courts "pose three questions to be answered in succession: (1) is the contractual impairment substantial and, if so, (2) does the law serve a legitimate public purpose such as remedying a general social or economic problem and, if such purpose is demonstrated, (3) are the means chosen to accomplish this purpose reasonable and necessary." Buffalo Teachers, 464 F.3d at 368. Thus, to establish a Contract Clause violation, Plaintiffs must show not just an impairment to a contract, but also "that the impairment was

unconstitutional, meaning that it was substantial and was not reasonable and necessary to a legitimate public purpose." Donohue v. Cuomo, 980 F.3d 53, 82 (2d Cir. 2020).

Plaintiffs contend that they have alleged that they have contracts to let their property on a short-term basis for more than 90 days per year, and that these contracts are set "months and even years in advance." The law would force them to cancel such contracts, and thus substantially impairs them. Plaintiffs also contend that Defendants have not used a reasonable and necessary means to achieve the ordinance's purpose because the law does not apply in the same way to all districts in Lake Placid and North Elba, and the amortization period in the statute is insufficient to allow rentals already contracted to go forward.

The parties first dispute whether the ordinance causes a substantial impairment to Plaintiffs' contractual rights. "To assess whether an impairment is substantial," a court looks to "'the extent to which reasonable expectations under the contract have been disrupted.'" Buffalo Teachers, 464 F.3d at 368 (quoting Sanitation & Recyling Indus. Inc. v. City of New York, 107 F.3d 985, 993 (2d Cir. 1997)). Further, "'the reasonableness of expectations depends, in part, on whether legislative action was foreseeable.'" Donohue, 980 F.3d at 82 (quoting Sullivan v. Nassau Cty. Interim Fin. Auth, 959 F.3d 54, 65 (2d Cir. 2020)). An "'[i]mpairment is greatest where the challenged government legislation was wholly unexpected.'" Id. (quoting Sanitation & Recycling Indus., 107 F.3d at 993). "In evaluating 'the degree of impairment' we also consider 'the extent to which the challenged provision provides for gradual applicability of grace periods.'" Id. (quoting Sanitation & Recycling Indus., 107 F.3d at 393).

Here, Plaintiffs allege that the they entered into contracts to rent out their properties

on a short-term basis throughout 2020.  Complt. at ¶ 265.  Those contracts, "some entered into months and even years in advance of March 17, 2020," when the Defendants enacted their ordinance, "obligate Plaintiffs to rent their properties in excess of 90 days throughout" 2020.  Id. at ¶ 266.  Plaintiffs allege that the ordinance "impairs" their "contractual relationships" by "creat[ing] unanticipated losses and potential claims against" them "not contemplated at the time of offering their property for short-term rental."  Id. at ¶ 267.  The ordinance further "upsets Plaintiffs' settled contractual expectations concerning their future revenue and income."  Id. at ¶ 268.  Plaintiffs claim they could not reasonably have foreseen the 90-day cap when they entered into their agreements to rent.  Id. at ¶ 270. The statute, Plaintiffs claim, does not permit these previously contracted uses to continue. Id. at ¶ 271.

The Court finds that Plaintiffs have alleged facts which make it plausible that the ordinance substantially impairs contractual relationships.  While discovery will be necessary to determine the type and extent of Plaintiffs' losses, if any, because of the short-term rental law, they have alleged that they signed contracts to let their property on a short term basis which the 90-day limit prevents them from fulfilling.  They allege that they could not have anticipated such losses, and that the ordinance does not provide a sufficient means for them to limit their losses with a grace period.  The ordinance does not fully exempt contracts already signed.  Under those conditions, Plaintiffs have stated a claim on the first element.

Plaintiffs do not appear to dispute that the Defendants had a legitimate public purpose for their ordinance.  They could not, as promoting public safety, preventing public nuisances, and promoting affordable housing are all legitimate governmental concerns.

Plaintiffs claim, instead, that the regulations used to achieve these public aims are neither reasonable or necessary.  A court reviewing the reasonableness of a legitimate government action "must accord substantial deference to the Town's conclusion that its approach reasonably promotes the public purposes for which the ordinance was enacted." Sal Tinnerello & Sons, 141 F.3d at 54.  "It is not the province of [the Court] to substitute its judgment for that of . . . a legislative body . . . by determining that there might have been a more appropriate method by which" to achieve the legislature's end.  Id. at 54-55. Similarly, a municipality "need not prove its choice the best among the available alternatives[.]" Id. at 55.  Instead, a plaintiff "must prove that there is no rational relationship between the [municipality's] ends and its means."  Id.  If the law "impairs a private contract," the court provides "substantial deference" to the legislature's decisions.  Buffalo Teachers Fed'n, 464 F.3d at 369.

Plaintiffs argue that "their Complaint plausibly alleges that the" ordinance "is not drawn in an appropriate and reasonable way to advance the Defendants' stated interest of 'establishing comprehensive registration and licensing regulations' of short-term rental properties, 'applicable to all properties in all districts within the Village of Lake Placid and Town of North Elba,'" that safeguard the public health, safety and welfare by regulating while 'achiev[ing] a balance between those that rent for short-terms and those that do not.'" The statute too lacks a sufficient amortization period and covers too few properties with the 90-day cap.  Thus, Plaintiffs contend "it is more than plausible that the appropriate and reasonable way to advance the Defendants' stated interests in the" ordinance "required protection of Plaintiffs['] contractual obligations."

This argument does not even attempt to contend that no rational relationship exists

between the aim of the ordinance to provide regulations for short-term rental properties and the provisions that limit the number of days that certain properties can provide a short-term rental.  Instead, the Plaintiffs' complaint is that there were better ways to achieve the regulation of such properties than the ones that the Defendants chose.  That allegation fails to satisfy the requirements of a contract clause claim and instead asks the Court to set aside deference for the Defendants' choices required in the law.  Further, the Court must conclude that a limit on the number of days which a property can be rented on a short-term basis bears a rational relationship to the aims the Plaintiffs describe above, whether that limit is 90 days, or the 120 days of the proposed amended to the ordinance introduced before the North Elba Town Board and provided to the Court.[4]  Likewise, a failure to provide a grace period for previous contracts is a choice for which the Court will not substitute its judgement.  For those reasons, the Court will grant the motion to dismiss with respect to this claim as well.

### G.    First Amendment Claims

Plaintiffs agree with the Defendants that they have failed to state a claim upon which relief could be granted in Count 13, which alleges a First Amendment violation. Defendants' motion will be granted in that respect as well.

### H.    Municipal Liability

Defendants also seek dismissal of any municipal liability claims that Plaintiff may attempt to allege in the Complaint.  To state a Section 1983 claim against a municipality, a plaintiff must allege that his rights were violated "pursuant to a governmental custom,

---

[4]See dkt. # 7-4.

policy, ordinance, regulation, or decision." <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983).  That plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Id.</u>

Here, the Plaintiffs claim that they have been injured by a local law passed by the Defendants.  A local ordinance surely represents an official policy or custom, and the Plaintiffs have therefore alleged municipal liability sufficient to survive a motion to dismiss.  The motion to dismiss will be denied in this respect.

     **I.**    **State Law Claims**

Defendants also seek dismissal of any state-law claims.  They argue that Plaintiffs have not filed a notice of claim as required by New York law and therefore cannot maintain any claims for damages, either as part of their claims or as incidental to their claims for equitable relief.  Plaintiffs have also, Defendants claim, failed to exhaust their administrative remedies and cannot bring any state-law claims.  In any case, since the state-law claims are redundant of the federal constitutional claims, they should be dismissed.

The Court will grant the motion and dismiss the state-law claims.  The Complaint does not distinguish between the state-law claims and the federal constitutional claims, and does not plead any separate state-law claims.  "Where claims are brought pursuant to the New York State Constitution and mirror claims brought under Section 1983, courts in this Circuit have held that there is no private right of action on the state constitutional claims." <u>Wright v. City of Syracuse</u>, No. 10cv661, 2014 U.S. Dist. LEXIS 44524, at *54 (N.D.N.Y. Mar. 31, 2014) (<u>citing</u> <u>Canzoneri v Incorporated Vill. of Rockville Ctr.</u> 986 F.Supp.2d 194, 2013 U.S. Dist. LEXIS 171698, 2013 WL 6330671, at *11 (E.D.N.Y. Dec.

48

5, 2013), and collecting cases).  The Court agrees, and will dismiss Plaintiff's state law claims, "[b]ecause all state constitutional law claims are also asserted as Section 1983 claims."  Krug v. County of Rennselaer, 559 F.2d 223, 248 (2d Cir. 2008).

## IV.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, dkt. # 7, is hereby GRANTED in part and DENIED in part, as follows:

1.     The motion is GRANTED as unripe with respect to any as-applied due-process challenges to the ordinance;

2.     The motion is GRANTED without prejudice with respect to the Third Count of the claim;

3.     The motion is GRANTED with respect to Plaintiffs' state-law claims;

4.     The motion is GRANTED with respect to Plaintiffs' First-Amendment claims;

5.     The motion is GRANTED with respect to Plaintiffs' facial substantive and procedural due process claims;

6.     The motion is GRANTED with respect to Plaintiffs' Contract Claus claim; and

7.     The motion is DENIED in all other respects.


Thomas J. McAvoy
Senior, U.S. District Judge

**IT IS SO ORDERED.**

Dated:         March 25, 2021

49